UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

THE ESTATE OF JOSEPH R. KANE,
deceased; STACIE KANE, individually,
and as guardian of JOSEPH P. KANE;
and THOMAS KANE, individually,

               Plaintiffs,

    v.

EPLEY'S INC., an Idaho corporation,

               Defendant.

Case No. 3:15-CV-00105-EJL

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Before the Court in the above-entitled matter are the Defendant's Motion for Summary Judgment and related Motion to Strike.[1] The parties have filed their responsive briefing and the matters are ripe for the Court's consideration. The Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter is decided on the record without oral argument.

---

[1] There are other motions relating to the Plaintiffs' request to seek punitive damages that are pending before Chief Magistrate Judge Ronald E. Bush.

MEMORANDUM DECISION AND ORDER - 1

## FACTUAL AND PROCEDURAL BACKGROUND

The events giving rise to this case occurred during a four-day whitewater rafting trip in June of 2014 on the Lower Salmon River in Idaho. Plaintiffs Joseph R. Kane and his son Thomas Kane (aka "Mick") made reservations to participate in the trip as part of a Boy Scouts of America ("BSA") sponsored group outing. (Dkt. 1.) There were eighteen participants signed up for the trip.[2] Defendant Epley's, Inc. ("Epley's") was the rafting company hired for the excursion. On the last day of the trip, June 27, 2014, the group encountered the "Slide Rapid" which was the largest rapid of the trip. Mr. Kane and his son were thrown from their raft while running through the Slide Rapid.[3] Thomas Kane was retrieved by another of the group's rafts further downstream. Mr. Kane was unconscious when he was pulled to shore downstream from the rapid by one of the Defendant's guides, Mike Cornforth, who began CPR.[4] Mr. Kane was transported to a hospital in Lewiston, Idaho where he was pronounced dead. As a result of these events, the Plaintiffs initiated this action against the Defendant by filing a Complaint raising claims for wrongful death, negligent infliction of emotional distress, and loss of consortium. (Dkt. 1.)[5] Defendant

---

[2] The Group consisted of nine adults and nine minors ranging in age from 14-17 years old. (Dkt. 17-14, Dec. Nicolazzo.)

[3] A third person, Andrea Neault, was also thrown from another of the group's rafts in the Slide Rapid. Mrs. Neault eventually made it to shore further downstream and was able to rejoin her raft.

[4] The guides employed by Defendant for the trip were Alex Estes, Mike Cornforth, Becca Sharp, and Miles Ranck.

[5] The Plaintiffs in this action are Joseph R. Kane and his estate, Stacie Kane, Mr. Kane's wife, and their two sons Thomas Kane and Joseph P. Kane. (Dkt. 1.)

MEMORANDUM DECISION AND ORDER - 2

then filed the instant Motion for Summary Judgment and Motion to Strike which the Court

now takes up.[6]

## STANDARD OF REVIEW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of

Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered

forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c). An issue is "material" if it affects the outcome of the litigation and may be

considered "genuine" if it is established by "sufficient evidence supporting the claimed

factual dispute…to require a jury or judge to resolve the parties' differing versions of the

truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank*

*v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)); s*ee also British Motor Car Distrib. v.*

*San Francisco Auto. Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

---

[6] Plaintiffs also filed a Motion to Supplement Authority which the Court granted. (Dkt. 30, 43.)

MEMORANDUM DECISION AND ORDER - 3

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a complete[] failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car*, 882 F.2d at 374 (citation omitted). When applying this standard, the court views all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## ANALYSIS

### 1.      Motion to Strike

Plaintiffs have designated two experts in this case – Jesse Sears and Paul Nicolazzo – and disclosed their preliminary reports. Defendant moves to strike these experts' opinions and testimony arguing they are not qualified and/or are unreliable. (Dkt. 26.) Plaintiffs assert their experts are qualified and reliable and have attached the Second Declaration of Mr. Nicolazzo to their response brief. (Dkt. 29-7.) Defendant asserts the Second Declaration of Mr. Nicolazzo is untimely and improper. (Dkt. 32.)

#### A.      Plaintiffs' Expert Opinions and Submissions

Defendant seeks to strike the portions of the Plaintiffs' responsive filings to the Motion for Summary Judgment that rely on their experts' opinions and testimony as inadmissible because they 1) rely on different standards than those contained in the statute and regulations, 2) lack sufficient foundation, and 3) are not competent to offer such testimony. (Dkt. 26, 32.) Plaintiffs maintain their experts are qualified to testify about the industry standard, breach of duty, and related matters. (Dkt. 29.)[7]

The Court may consider expert opinion testimony in ruling on a summary judgment motion so long as it contains facts that would be admissible at trial and the opinion is based on the expert's personal knowledge. In considering expert testimony, the Court has a "gatekeeping responsibility" to objectively screen such testimony to ensure that it "is not

---

[7] Plaintiffs also rely on these experts in their Motion to Amend Complaint to Seek Punitive Damages. (Dkt. 17.) This Court makes no determination regarding the use of these experts with regard to that Motion.

only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141–42 (1999). This obligation "applies not only to testimony based on 'scientific knowledge,' but also to testimony based on 'technical' and 'other specialized' knowledge." *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (quoting *Kumho Tire supra*). Prior to considering proffered expert testimony, a trial court "must merely make a determination as to the proposed expert's qualifications" as well as the relevance and reliability of the testimony. *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1124 (9th Cir. 1994). A court is not to attempt to determine whether an expert's conclusions are correct, but rather examine only "the soundness of his methodology." *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("*Daubert II*"). On a motion for summary judgment, the Court does not weigh the persuasiveness or credibility of an expert but, instead, only determines whether there is a genuine issue for trial.

### i)   Expert Qualifications

Rule 702 requires that a testifying expert be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. Rule 702 "contemplates a broad conception of expert qualifications" and is "intended to embrace more than a narrow definition of qualified expert." *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994); *see also* Fed. R. Evid. 702 advisory committee's note ("In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony.").

MEMORANDUM DECISION AND ORDER - 6

Defendant challenges the qualifications of both of Plaintiffs' experts arguing they lack sufficient foundation to testify on the industry standard. (Dkt. 26, 32.) Specifically, Defendant points out that neither expert properly research the industry standard for a water cut-off level for the Slide Rapid and argues their reliance on their own past experience and other outfitters' cut-off levels for the Slide Rapid is insufficient and speculative and should be stricken as inadmissible. (Dkt. 26 at 6-8.) Plaintiffs argue their experts are qualified to testify concerning the industry standard and whether the Defendant conformed to those standards as they each possess the knowledge, skill, experience, training, and education to offer their opinions concerning the industry standard in this case. (Dkt. 29 at 5-6.) Moreover, Plaintiffs assert, their experts are acquainted with many in the industry; have personally worked for many different groups and outfitters who regularly run the river; and have reviewed publicly available information related to current industry standards which, they contend, confirms their experience, knowledge, and understanding of the industry standards they reference in their reports. (Dkt. 29 at 6.)

Having reviewed the qualifications of Plaintiffs' experts, the Court concludes that, for purposes of this Motion, their training, knowledge, experience, and education qualify them to opine regarding the industry standards in this case and whether Defendant conformed to those standards.

Jesse Sears worked as a full time commercial guide from 1997-2006. (Dkt. 17-6, Ex. O.) Mr. Sears' guided on the Lower Salmon River during that time and has rowed rafts through the Slide Rapid at various water levels multiple times. From 2006-2008, Mr. Sears

MEMORANDUM DECISION AND ORDER - 7

worked at Boise State University as the Outdoor Program Coordinator and helped with obtaining, operating, and managing an educational commercial permit on the Lower Salmon River. Thereafter, Mr. Sears worked for two years as a United States Forest Service River Ranger on the Middle Fork of the Salmon River. Mr. Sears' last raft trip down the Lower Salmon River was on October 6, 2015.

Paul Nicolazzo was a professional river guide and safety kayaker from 1981-2002 on seven rivers including the Lower Salmon River. (Dkt. 17-13, Ex. W.) During those years, Mr. Nicolazzo also worked at three different outward bound schools and was a wilderness medicine instructor. Currently, Mr. Nicolazzo is an annual presenter at outdoor program design and management conferences, is the president/director of the Wilderness Medicine Training Center, Inc., and has authored various publications regarding wilderness medicine and outdoor programing. In particular as to this case, Mr. Nicolazzo has lead over 20 trips on the Lower Salmon River and through the Slide Rapid at various water levels including private, guide training, and commercial trips. (Dkt. 17-13, Ex. W.) His most recent trip was in July of 2015.

Based on the foregoing, the Court finds both individuals to be knowledgeable and experienced in commercial rafting on the Lower Salmon River and, in particular, with the Slide Rapid. As such, they are qualified to testify as experts concerning the standard practice for commercial whitewater outfitters and guides in Idaho.

MEMORANDUM DECISION AND ORDER - 8

ii)      **Relevant and Reliable**

In addition to being qualified, the "[e]xpert testimony [must] be both relevant and reliable." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (citations and quotations omitted). Relevancy "simply requires that the evidence...logically advance a material aspect of the party's case." *Id.* at 463 (citation and marks omitted). Rule 702 allows admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. To be admissible, evidence must also be relevant under Rule 402 and its probative value must not be substantially outweighed by the danger of unfair prejudice under Rule 403.

The reliability prong of Rule 702 requires that expert testimony be based on sound principles and methodology. Reliability requires the court to assess "whether an expert's testimony has a 'reliable basis in the knowledge and experience of the relevant discipline.'" *Estate of Barabin*, 740 F.3d at 4683 (quoting *Kumho Tire*, 526 U.S. at 149 (citations and alterations omitted)). The Supreme Court has suggested several factors that courts can use in determining reliability of scientific testimony: 1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community. *See Daubert*, 509 U.S. at 592–94. When considering the reliability of non-scientific testimony, however, the "*Daubert* factors (peer review, publication, potential error rate, etc.) simply

MEMORANDUM DECISION AND ORDER - 9

are not applicable to this kind of testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *Hankey*, 203 F.3d at 1169; *see also Kumho Tire*, 526 U.S. at 150 ("Engineering testimony rests upon scientific foundations, the reliability of which will be at issue in some cases.... In other cases, the relevant reliability concerns may focus upon personal knowledge or experience.").

Courts are afforded "broad discretion" when determining whether an expert's testimony is reliable. *Hankey*, 203 F.3d at 1167-68. In making this determination, the court must rule not on the correctness of the expert's conclusions but on the soundness of the methodology, *Estate of Barabin*, 740 F.3d at 463 (citation omitted), and the analytical connection between the data, the methodology, and the expert's conclusions, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). *See also Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) ("Rule 702 demands that expert testimony relate to scientific, technical or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs."); Fed. R. Evid. 702 advisory committee's notes to 2000 amendments ("[T]he testimony must be the product of reliable principles and methods that are reliably applied to the facts of the case."). The "proponent of the expert...has the burden of proving admissibility." *Cooper*, 510 F.3d at 942; *see also Daubert II*, 43 F.3d at 1316.

Here, Defendant challenges the reliability of the Plaintiffs' experts arguing they do not have the requisite knowledge and have not properly reviewed/researched the industry standards applicable to this case. (Dkt. 16, 32.) Defendant further argues the Idaho Code

MEMORANDUM DECISION AND ORDER - 10

and implementing regulations sets forth the standard of care for outfitters and the testimony of these experts is inconsistent with that standard and lacks foundation. (Dkt. 26 at 3.) Plaintiffs argue the statutes and regulations do not establish a singular standard of care for commercial river guides but, instead, require outfitters and guides to conform to the standard of care expected of members of the profession in addition to satisfying the licensing requirements. (Dkt. 29 at 8-9.) Having considered these arguments and the record, the Court finds the testimony of Mr. Sears and Mr. Nicolazzo to be relevant and reliable for purposes of this Motion.

Mr. Sears' opinion is based upon his knowledge and experience from when he worked in the industry and his review of materials related to this case. (Dkt. 17-6, Ex. N, O) (Dkt. 21-3, Ex. C, Depo. Sears.) Defendant contends that Mr. Sears did no research on the industry standard for the Slide Rapid. (Dkt. 26 at 5.) Although Mr. Sears testified he had not contacted any outfitter in Riggins, Idaho with respect to the local standard of care in the formation of his opinions for this case, in his report Sears refers to having done some industry research stating he could not "find a current company that has a 25,000 cfs cut off on the Lower Salmon [River]." (Dkt. 17-6, Ex. O, Sears Report.) Similarly, during his deposition Mr. Sears refers to documents he printed off the internet from other rafting companies showing they do not offer June trips on the Lower Salmon River. (Dkt. 21-3, Ex. C, Depo. Sears at 140-41.) Mr. Nicolazzo's testimony is also reliable based on his overall knowledge and experience in outfitting and river guiding and his particular experience rafting the Lower Salmon River.

MEMORANDUM DECISION AND ORDER - 11

The fact that both of Plaintiffs' experts were guides on the Lower Salmon River some time ago and whether or not they researched the industry standard in forming their opinions are both questions that go to their credibility, which may be subject to cross-examination at trial. The witnesses will not be allowed to testify contrary to the statutory and regulatory licensing requirements for outfitters in Idaho. The Court finds, however, that those licensing requirements do not set the standard of care at issue in this case. As discussed more below, the standard of care for outfitters and guides in Idaho is the ordinary standard of care owed by professionals to their customers. Because the Industry standards for outfitters and guides applicable in this case is not clearly established, the Court further finds the experts' testimony is relevant as it provides specialized knowledge and expertise concerning the standards applicable to whitewater outfitters that will assist the trier of fact. Fed. R. Evid. 402, 403, and 702. The Motion to Strike is denied in this regard.

**B.      Second Declaration of Nicolazzo**

On November 16, 2015, Mr. Nicolazzo prepared a written statement (i.e. expert report) of his opinion in this case. (Dkt. 17-13, Ex. W, Nicolazzo Report.) Defendant deposed Mr. Nicolazzo on January 6, 2016. (Dkt. 17-4, Ex. J and Dkt. 29-6, Ex. 10, Depo. Nicolazzo.) On January 30, 2016, Plaintiffs filed the Declaration of Mr. Nicolazzo in support of their Motion for Leave to Amend Complaint and Assert Punitive Damage Claims. (Dkt. 17-14, Dec. Nicolazzo.) Thereafter, on March 31, 2016, Plaintiffs filed a

Second Declaration of Mr. Nicolazzo in response to the Defendant's Motion to Strike. (Dkt. 29-7, 2nd Dec. Nicolazzo.)

The Defendant challenges Mr. Nicolazzo's Second Declaration arguing it differs from his prior deposition testimony and improperly adds new information. (Dkt. 29 at 2.) For purposes of this Motion for Summary Judgment, the Court agrees that the Second Declaration contains new information regarding the foundation for Mr. Nicolazzo's opinions; i.e., that he reviewed particular websites, blogs, and other information that support his opinion. (Dkt. 29-7, 2nd Dec. Nicolazzo.) Prior to his Second Declaration, there was no indication Mr. Nicolazzo had reviewed such information in formulating his opinion.

Mr. Nicolazzo's written report references the Defendant's website and the deposition of the Defendant's manager taken in this case with regard to the policy and description of the Slide Rapid and flow rates but no other indication is given as to what materials Mr. Nicolazzo relied upon or used in formulating his opinion aside from his own experience. (Dkt. 17-13, Ex. W, Nicolazzo Report.) Mr. Nicolazzo's first Declaration attached to the Motion to Amend refers to other materials in the record: a promotional brochure from the Boy Scouts of America; statements from Andrew House, Christian Li, and David Nault; the GoPro video exhibit; water level reports; and the report of Defendant's expert. (Dkt. 17-14.) This first Declaration makes reference to the practice of "most outfitters" with regard to running the Slide Rapid during June and above 20,000 cfs. (Dkt. 17-14 at 2, ¶ 4.) The first Declaration, however, does not reveal which outfitters, if

MEMORANDUM DECISION AND ORDER - 13

any, Mr. Nicolazzo contacted or relied upon in forming his opinion. In his deposition, Mr. Nicolazzo testified that he did not contact any of the Riggins-based outfitters who regularly go down the Lower Salmon River but that he had spoken with Jesse Sears and Mike Armstrong regarding his work in this case. (Dkt. 29-6, Ex. 10, Depo. Nicolazzo at 50.)[8]

In his Second Declaration, however, Mr. Nicolazzo now states he reviewed particular websites, blogs, and policies from various outfitter and industry participants relating to their policies associated with and comments about the Slide Rapid. (Dkt. 29-7, 2nd Dec. Nicolazzo at ¶ 2.) The Second Declaration does not say when Mr. Nicolazzo reviewed these materials or expressly state whether he relied on those in formulating his opinion. Instead, the Second Declaration states those materials "are consistent with and bolster my opinion that this trip should not have launched at the water level present and that defendant certainly should not have run the Slide [Rapid] at those flows with the clientele involved." (Dkt. 29-7, 2nd Dec. Nicolazzo at ¶ 5.)

The Second Declaration also refers to conversations from 2000 with other outfitters on the Lower Salmon River, river managers, guides, and the Bureau of Land Management manager regarding running the Slide Rapid over 20,000 cfs and a 2015 conversation with a program manager for an outward bound school regarding when they schedule raft trips on the Lower Salmon River. (Dkt. 29-7, 2nd Dec. Nicolazzo at ¶ 4.) These conversations go to Mr. Nicolazzo's experience and knowledge of the Slide Rapid at that time and his

---

[8] Mike Armstrong is the Director of the Northwest Outward Bound School which runs commercial trips down the Lower Salmon River. (Dkt. 29-6, Depo. Nicolazzo at 50.)

MEMORANDUM DECISION AND ORDER - 14

"understanding that the Slide Rapid was rarely run over 20,000 cfs" and appear to be offered to support the conclusions in his written report. (Dkt. 29-7, 2nd Dec. Nicolazzo at ¶¶ 3, 4.) The identity of the people in these other conversations, however, is not disclosed.

The Court finds this is new information revealed for the first time in Mr. Nicolazzo's Second Declaration and is improper for purposes of this Motion for Summary Judgment. Federal Rule of Civil Procedure 26(a)(2)(B) governs the disclosures of expert testimony and what must be contained in their written reports. Specifically, the rule requires "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). Parties are required to timely supplement their expert disclosures in accordance with Rule 26(e)(2). Fed. R. Civ. P. 26(a)(2)(E) and 26(e)(2); *see also* (Dkt. 13.) In this case, disclosing additional basis and materials considered by Mr. Nicolazzo after discovery has closed and in response to the Motion to Strike is untimely. Furthermore, it is prejudicial to the Defendant for the Court to consider this newly disclosed information offered to "bolster" Mr. Nicolazzo's opinion at least for purposes of the Motion for Summary Judgment. (Dkt. 13.) For these reasons, the Court will grant the Motion to Strike as to the Second Declaration of Mr. Nicolazzo. This ruling is limited to the Court's consideration of this material in ruling on the Motion for Summary Judgment.

2.     **Motion for Summary Judgment**

The claims in this case derive from common law negligence, the elements of which are: 1) a duty recognized by law requiring the defendant to conform to a certain standard of

MEMORANDUM DECISION AND ORDER - 15

conduct; 2) a breach of that duty; 3) a causal connection between the defendant's conduct and the plaintiff's injury; and 4) actual loss or damage suffered by plaintiff. *See Johnson v. McPhee*, 210 P.3d 563, 574 (Idaho Ct. App. 2009); *Obendorf v. Terra Hug Spray Co., Inc.*, 188 P.3d 834, 840 (Idaho 2008).[9]

Plaintiffs allege 1) Defendant had a duty of care as a licensed outfitter under Idaho Code § 6-1206 to conform to the standard of care for outfitters, 2) Defendant's conduct on June 24, 2014 was wrongful and breached the standard of care, 3) Mr. Kane died as a direct and proximate result of that conduct, and 4) Plaintiffs suffered and continue to suffer damages as a result. (Dkt. 1.) In its Motion for Summary Judgment, Defendant argues 1) it is statutorily immune from liability pursuant to Idaho Code § 6-1206, 2) there is no evidence the Defendant breached its statutory duties, 3) Mr. Kane assumed the risk and/or waived any claims against Defendant for his death, and 4) there is no evidence establishing the Defendant's conduct was the proximate cause of Mr. Kane's death. (Dkt. 16.)

### A.    Duty: Defining the Standard of Care

The parties dispute what the applicable standard of care is in this case. Plaintiffs offer their expert witnesses as well as other industry materials to define the standard of care. Defendant challenges the admissibility and reliability of those witnesses and other materials and maintain they are statutorily immune from liability.

---

[9] Federal courts sitting in diversity actions apply the forum state's substantive law to negligence actions. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78. Immunity statutes are substantive and, therefore, Idaho's law will be applied here. *See Kohlrautz v. Oilmen Participation Corp.*, 441 F.3d 827, 830–33 (9th Cir. 2005).

"The Idaho Legislature has recognized both the value to the state's economy and the risky nature of outdoor recreation by enacting several different laws aimed at promoting outdoor recreation, while also attempting to delineate and limit the circumstances under which providers of these activities may be liable for the injuries that inevitably happen in the outdoors." Brent Wilson, *Lee v. Sun Valley Company: Public Duty or Abdication of Free Will and Personal Responsibility?*, 41 Idaho L. Rev. 429, 431 (2005); *see also* Idaho Code § 6-1201 and § 36-2101. Idaho's Responsibilities and Liabilities of Recreational Participants and Outfitters and Guides ("Outfitter's Law") delineates the legislative purpose, respective duties, and outfitters' liabilities in Idaho. Idaho Code § 6-1201 *et seq.* Idaho Code § 6-1206 states:

> (a) No licensed outfitter or guide acting in the course of his employment shall be liable to a participant for damages or injuries to such participant unless such damage or injury was directly or proximately caused by failure of the outfitter or guide to comply with the duties placed on him by chapter 21, title 36, Idaho Code, or by the rules of the Idaho outfitters and guides board, or by the duties placed on such outfitter or guide by the provisions of this chapter.[10]

The duties of an outfitter are specified as:

> All outfitters offering professional services in this state shall provide facilities, equipment, and services as advertised or as agreed upon between the outfitter and the participant. All services, facilities, and equipment provided by outfitters in this state shall conform to safety and other requirements set forth in chapter 21, title 36, Idaho Code, and by the rules promulgated by the Idaho outfitters and guides board created by chapter 21, title 36, Idaho Code.

Idaho Code § 6-1203. The duties of a guide are:

---

[10] Chapter 21, title 36 of the Idaho Code sets forth the Idaho State Department of Fish and Game's requirements for outfitters and guides. *See* Idaho Code § 36-2100 *et seq.*

MEMORANDUM DECISION AND ORDER - 17

>Any guide providing personal services for an outfitter in this state shall conform to the standard of care expected of members of his profession and he shall comply with all duties and requirements placed on him by chapter 21, title 36, Idaho Code, and by the rules promulgated by the Idaho outfitters and guides board created by chapter 21, title 36, Idaho Code.

Idaho Code § 6-1204.

It is undisputed that these provisions of the Outfitter's Law are implicated in this case. The Defendant is, and at all material times was, a licensed outfitter under Idaho Code § 6-1202(a) and § 6-1206; Defendant's guides were licensed and employed as guides by the Defendant; Defendant and its guides were providing professional services and acting in the course of their employment at the time of the events in question; and Mr. Kane and Thomas Kane were participants as defined under Idaho Code § 6-1202(c). (Dkt. 1.) Under Idaho Code § 6-1206, the Defendant is not liable to Plaintiffs unless the claimed damage or injury was directly or proximately caused by failure of the Defendant or Defendant's guides to comply with the duties placed on it as stated in the Outfitter's Law.

For purposes of this Motion, there is no dispute that Defendant and its guides were properly licensed in accordance with Idaho's statutory and regulatory requirements. (Dkt. 16, 21, 25.) Thus, the Defendant is not liable for having failed to comply with the statutory licensing regulations. The only duty alleged here arises from the statute's language requiring the Defendant to "conform to the standard of care expected of members of his profession ...." Idaho Code § 6-1204. (Dkt. 16, 21, 25.)

That statutory duty of care essentially codifies Idaho's common law duty of care owed by professionals to their customers. Wilson, *Lee v. Sun Valley Company: Public*

MEMORANDUM DECISION AND ORDER - 18

*Duty or Abdication of Free Will and Personal Responsibility?*, 41 Idaho L. Rev. at 455. That is to say, Defendant had a duty to exercise ordinary care to "prevent unreasonable, foreseeable risks of harm to others." *Hanks v. Sawtelle Rentals, Inc.*, 984 P.2d 122, 126 (Idaho 1999) (quoting *Sharp v. W.H. Moore Inc.*, 796 P.2d 506, 509 (Idaho 1990)). This standard of care, or duty, applies to anyone engaging in the business of guiding. *See* Idaho Code § 36–2102. For these reasons, the Court finds the Defendant had a duty to exercise ordinary care to "prevent unreasonable, foreseeable risks of harm to others." *Hanks*, 984 P.2d at 126.

A question of fact exists, however, concerning what that standard of care is in this case; i.e. what ordinary care Epley's, as an outfitter, owed to Plaintiffs, as its customers/participants. The parties dispute the testimony of the expert witnesses offered to opine regarding the standards of the profession and the use/relevance of certain public information and industry publications to define the standard of care – in particular the standard of care in the profession for outfitters running the Slide Rapid above 20,000 cfs. (Dkt. 21 at 1-3) (Dkt. 25 at 2.)

Each sides' expert witnesses offer differing opinions concerning the standard of care applicable to the circumstances presented in this case. In his report, the Defendant's expert, Gary Lane, states that he used a 25,000 cfs cut-off for running commercial trips at the Slide Rapid but that "it has long been the standard practice and is the practice today for commercial outfitters on the Lower Salmon River to take commercial trips down the Lower Salmon, including the Slide rapid, at flows up to and exceeding 25,000 cfs" and

MEMORANDUM DECISION AND ORDER - 19

concludes that Epley's conformed to the standard of care expected of outfitters and guides rafting the Lower Salmon at the Slide Rapid with this group, gear, and at water levels higher than 20,000 cfs. (Dkt. 17-4, Ex. I at 4, 7.) Plaintiffs' experts, on the other hand, conclude the Defendant violated the standard of care with regard to running the Slide Rapid above 20,000 cfs under the circumstances of this case. (Dkt. 17-6, Ex. O) (Dkt. 17-13, Ex. W.) Resolving the disputed questions presented by the experts' testimonies requires the weighing of evidence and credibility determinations which must be done at trial.

Likewise, the public information and industry publications show genuine issues of material fact exist in this case regarding the standard of care for Idaho outfitters running commercial trips on the Lower Salmon River; particularly with regard to the Slide Rapid at high flows.

Both sides in this case refer to the BLM's Lower Salmon River Boater's Guide ("BLM Guide") which provides maps and general descriptions of the rapids on the river. (Dkt. 16-5, Ex. 14) (Dkt. 17-2, Ex. B.)[11] With regard to the Slide Rapid, the BLM Guide notes that at flows of 20,000 cfs and higher the rapid is a Class V-VI but it does not purport to set the standard of care for outfitters running this rapid. (Dkt. 16-5, Ex. 14 at Map 15) (Dkt. 17-2, Ex. B.) Plaintiffs cite to the American Whitewater Safety Code which describes the International Scale of River Difficulty. (Dkt. 17-2, Ex. A.) Defendant points out,

---

[11] The Court has reviewed the materials filed with the Plaintiffs' Motion to Amend (Dkt. 17) that were referenced in Plaintiffs' response to the Motion for Summary Judgment (Dkt. 21).

however, that this document expressly states "[t]his code is not intended to serve as a standard of care for commercial outfitters or guides." (Dkt. 25-2, Ex. 3.)

In response to the Motion for Summary Judgment and Motion to Strike, Plaintiffs point to several outfitter websites. Mountain River Outfitter, Riggins, Idaho. (Dkt. 21-3, Ex. A) (describing the whitewater rating scale on its website but does not specifically limit its commercial trips to under 20,000 cfs for the Lower Salmon River.) Northstar River Expeditions, McCall, Idaho ("Because of the Slide, when the river is running 20,000 cfs and higher, we do not run commercial trips on this section of the river."); Flow Adventures, Spokane, Washington ("Most outfitters do not run the Salmon if it is above 20,000 cfs…."); Winding Waters River Expeditions, Joseph, Oregon ("The Slide Rapid on the Lower Salmon, which is a mild mannered nerd at low water but gets angry, tears it's shirt off and transforms into a fearsome beast around, say, 20,000 cfs."); Holiday Rivers Expeditions, Grangeville, Idaho ("Running the Lower Salmon anywhere between 2,000-20,000 CFS…can make for the perfect trip, depending on what you're looking for."); Wapiti River Guides, Riggins, Idaho (discussing the importance of experience when choosing a river guide, the difference between a dory and a raft, and the classification of rapids). (Dkt. 29-1, Dec. Buck, Exs. 1-4, 7-8.) Plaintiff also cites blogs from "River Time with Nature's Apprentice" by Gary Lane, owner of Wapiti River Guides and Defendant's expert, discussing the Slide Rapid ("My personal level, as an outfitter [for running the

MEMORANDUM DECISION AND ORDER - 21

Slide Rapid] is now 25000 cfs" and experience, rules, and regulations for river guides and the Slide Rapid.) (Dkt. 29-1, Dec. Buck, Exs. 5, 6.)[12]

While these materials do not, in and of themselves, define the standard of care, and their admissibility and/or use at trial is not decided here, the materials do show a genuine issue of material fact is present in this case concerning the applicable standard of care.

Based on all of the foregoing, the Court finds genuine issues of material fact exist that preclude entering summary judgment.

**B.     Breach of Duty**

The parties also disagree about whether Defendant breached any duty it owed to Plaintiffs. Plaintiffs claim the Defendant's conduct was wrongful and otherwise breached the standard of care in five ways:

(1)     by taking Mr. Kane and Thomas Kane down the Lower Salmon River on June 24, 2014 knowing both individuals were inexperienced and knowing the river flow was in excess of 23,500 cfs. (Dkt. 1 at 6);

(2)     by taking Mr. Kane and Thomas Kane through the Slide Rapid when they knew or should have known the river's flow was in excess of 23,500 cfs producing extreme conditions and dangerous Class V or Class VI rapids and a significant risk to Mr. Kane and Thomas Kane who did not know of the risk;

(3)     by not using proper techniques to rescue Mr. Kane;

(4)     by not having an appropriate rescue plan in place to recover ejected riders before entering the Slide Rapid; and

---

[12]  In reviewing these materials, the Court has not considered the Second Declaration of Paul Nicolazzo as discussed previously with regard to the Defendant's Motion to Strike.

MEMORANDUM DECISION AND ORDER - 22

      (5)     by not having adequate equipment to operate under the then existing conditions on the Lower Salmon River.

(Dkt. 1 at 6-7.) Defendant disputes these allegations and maintains the Plaintiffs have failed to present evidence of the applicable standard of care either by expert testimony or with industry/public materials and, therefore, have failed to show a genuine issue of material fact exists. (Dkt. 25 at 3-4.) Defendant further argues it did not breach the applicable standard of care which is set by statute and administrative regulations all of which, Defendant maintains, it complied with. (Dkt. 25 at 5.)

For the same reasons discussed above with regard to duty, the Court finds a genuine issue of material fact exists as to whether Defendant breached the standard of care applicable in this case. This case presents the classic example of a battle of experts where both sides have presented contradicting testimony from experts concerning whether the Defendant breached a duty of care owed to Plaintiffs. Further, the facts surrounding events in question relevant to the breach issue are in dispute. For instance, the conditions presented on the day in question; what the guides knew regarding the water flow level of the Slide Rapid; whether there was a rescue plan and if that plan was followed; and any safety procedures in place and used by the guides. The jury, as the finder of fact, must consider all of the disputed facts, the credibility of the witnesses, and the weight the evidence in order to determine whether Defendant breached its duty. Therefore, summary judgment is denied on this question.

MEMORANDUM DECISION AND ORDER - 23

## C.    Assumption of the Risk and Waiver of Claims

Before embarking on the whitewater trip, Mr. Kane signed a BSA Informed Consent, Release Agreement, and Authorization ("BSA Release") and both Mr. Kane and Thomas Kane signed Epley's Participant Agreement, Release, and Acknowledgement of Risks ("Epley's Release").[13]

The BSA Release, for "high-adventure base participants" states:

I understand that participation in Scouting activities involves the risk of personal injury, including death, due to the physical, mental, and emotional challenges in the activities offered.

With appreciation of the dangers and risks associated with programs and activities, on my own behalf and/or on behalf of my child, I hereby fully and completely release and waive any and all claims for personal injury, death, or loss that may arise against the Boy Scouts of America, the local council, the activity coordinators, and all employees, volunteers, related parties, or other organizations associated with any program or activity.

(Dkt. 16-3, Ex. 2.)[14] Epley's Release states:

I, hereby agree to release, indemnify, and discharge [Epley's], on behalf of myself, my children, my parents, my heirs, assigns, personal representative and estate as follows:

1. I acknowledge that my participation in a guided raft trip entails known and unanticipated risks, that could result in physical or emotional injury, paralysis, death, or damage to myself, to property, or to third parties...I understand that such risks simply cannot be eliminated without jeopardizing the essential qualities of the activity.

---

[13]  Plaintiff Stacie Kane signed Epley's Release on behalf of Thomas Kane. (Dkt. 16-3, Ex. 5.)

[14]  The BSA also required Mr. Kane to provide a Pre-Participation Physical. (Dkt. 16-3, Ex. 3.)

MEMORANDUM DECISION AND ORDER - 24

**The risks include, among other things:** whitewater rapids will be encountered. I can be jolted, jarred, bounced, thrown and shaken about during rides through some of these rapids…I could be "washed" overboard…Also prolonged exposure to cold water can result in hypothermia, and in extreme cases death and accidental drowning is also a possibility.

Furthermore, [Epley's employees] might be unaware of a participant's fitness or abilities. They might misjudge the weather or other environmental conditions. They may give incomplete warnings or instructions, and the equipment being used might malfunction.

2. I expressly agree and promise to accept and assume all of the risks existing in this activity. My participation is purely voluntary, and I elect to participate in spite of the risks.

3. I hereby voluntarily release, forever discharge, and agree to indemnify and hold harmless [Epley's] from any and all claims, demands, or causes of action, which are in any way connected with my participation in this activity or my use of [Epley's] equipment or facilities, **including any such claims which allege negligent acts or omissions of [Epley's]**.
…
**By signing this document, I acknowledge that if anyone is hurt or property is damaged during my participation in this activity, I may be found by a court of law to have waived my right to maintain a lawsuit against [Epley's] on the basis of any claim from which I have released them herein.**

**I have had sufficient opportunity to read this entire document. I have read and understood it, and I agree to be bound by its terms.**

(Dkt. 16-3, Ex. 4, 5) (emphasis in original). Defendant argues these documents limit or eliminate its liability in this case because Mr. Kane and Thomas Kane assumed the risk and/or waived their claims. Plaintiffs counter that these releases do not limit their claims in light of the public duty placed on the Defendant under Idaho law. (Dkt. 21.)

MEMORANDUM DECISION AND ORDER - 25

As determined above, Idaho's Outfitter's Law imposes a statutory duty, i.e. a public duty, upon Defendant to conform to the standard of care expected of members of the profession. Because each of Plaintiffs claims in this case allege the Defendant's conduct violated its statutory public duty, neither written release absolves Defendant from liability if Defendant is found to have breached that public duty. *Morrison v. Northwest Nazarene Univ.*, 278 P.3d 1253, 1254 (Idaho 2012) (citing *Lee. Sun Valley Co.*, 695 P.2d 361, 363 (1984) ("Agreements exempting a party from liability for negligence will be upheld unless the party owes to the other party a public duty created by statute or the other party is at an obvious disadvantage in bargaining power."); *see also Jesse v. Lindsley*, 233 P.3d 1, 6 (Idaho 2008).[15] The outcome of each of the Plaintiffs' tort claims is instead dependent upon resolving the genuine issues of material fact that exist on those claims; not on the written releases.

The Complaint raises claims for wrongful death, loss of consortium, and negligent infliction of emotional distress. (Dkt. 1.) At trial, the Plaintiff must prove each of the elements of each of the claims in order to prevail.

As to the wrongful death claim, Mr. Kane's estate must prove two elements: (1) that an actionable wrong was committed by the defendant against the decedent, and (2) that the same actionable wrong caused the decedent's death. *Castorena v. General Elec.*, 238 P.3d

---

[15] Plaintiffs do not argue they had an obvious disadvantage in bargaining power. *Jesse*, 233 P.3d at 6 (quoting *Lee*, 695 P.2d at 363 (quoting *Rawlings v. Layne & Bowler Pump Co.*, 465 P.2d 107, 110–11 (Idaho 1970)) ("The general rule sustaining agreements exempting a party from liability for negligence is subject to two exceptions: '(1) one party is at an obvious disadvantage in bargaining power; or (2) a public duty is involved….'").

209, 219 (Idaho 2010); *see also* Idaho Code § 5-311(1). This is a separate cause of action, distinct from any claim the decedent could have brought for an injury prior to his death, accruing a right of action to the representative or surviving relatives of the decedent upon his or her death. *Id.* (quoting the Restatement (Second) of Torts § 899 cmt. c (1979)). Instead, a wrongful death claim is brought by a decedent's survivors to recover their damages resulting from a tortious injury that caused the decedent's death. As discussed elsewhere in this Order, questions of fact exist on this claim that preclude summary judgment.

The loss of consortium claims are made on behalf of Mrs. Kane, Thomas Kane, and Joseph P. Kane.[16] A claim for loss of consortium is a "wholly derivative cause of action contingent upon a third party's tortious injury to a spouse" as well as other third parties such as parents and children. *Conner v. Hodges*, 333 P.3d 130, 138 (Idaho 2014) (citations omitted). A loss of consortium cause of action is a separate and distinct cause of action personal to the deprived spouse or child. *Groves v. Firebird Raceway, Inc.*, 67 F.3d 306 (Table) (9th Cir. 1995) (citations omitted). "An award for loss of consortium is warranted when the tortious act of the defendant causes injury to the plaintiff's spouse [or parent], causing the plaintiff to suffer the loss of services, aid, society, companionship, comfort, and conjugal affection of their spouse [or parent]." *Id.* (citing *Phillips v. Erhart*, 254 P.3d 1,

---

[16] The Complaint alleges Mrs. Kane "suffered the loss of love and affection and financial support of her husband." (Dkt. 1 at ¶ 4.11.) As to Thomas and Joseph P. Kane, the Complaint alleges they each "suffered the loss of support and the love and affection of his father and the destruction of the parent-child relationship." (Dkt. 1 at ¶¶ 4.10, 4.12.)

10 (Idaho 2011); *Vannoy v. Uniroyal Tire Co.*, 726 P.2d 648, 657 (Idaho 1985) (an award for "loss of consortium should be supported by substantial competent evidence of the loss of services, society, companionship, sexual relations, etc." regarding the relationship between a husband and wife). This claim is dependent on the injured party's success or failure in the underlying tort claim against the third party. *Lightner v. Hardison*, 239 P.3d 817, 824 (Idaho Ct. App. 2010). Again, questions of fact exist on this claim and summary judgment is denied.

As to Thomas Kane's claim for negligent infliction of emotional distress, Defendant's argue summary judgment is proper because he was not physically injured and, therefore, cannot recover damages for pure emotional distress. (Dkt. 25 at 8.) In order to recover damages for emotional and psychological distress as alleged in the Complaint, Plaintiffs must prove Thomas Kane suffered some physical injury or physical manifestations of the alleged emotional and/or psychological distress. *See Carrillo v. Boise Tire Co., Inc.*, 274 P.3d 1256, 1264-65 (Idaho 2012).

The Complaint alleges Thomas Kane suffered "emotional and psychological distress from watching his father die, as well as the loss of support, love and affection of his father and the destruction of the parent-child relationship." (Dkt. 1 at ¶ 4.10.) The record makes reference to facts showing that after Thomas Kane was pulled from the water he was hypothermic and upset/concerned for his father. These allegations and references, while minimal, give rise to a genuine issue of material fact as to whether Thomas Kane suffered some physical injury and/or physical manifestations of the alleged

MEMORANDUM DECISION AND ORDER - 28

emotional/psychological distress. *See British Motor Car Distributors*, 882 F.2d at 374. Therefore, the Motion for Summary Judgment is denied on this claim.

### E.    Proximate Cause

Defendant also argues the Plaintiffs have failed to show any causal connection between the Defendant's conduct and the Plaintiffs' injury and/or any actual loss or damage allegedly suffered by Plaintiffs. (Dkt. 16, 25.) Defendant notes that no physician has testified as to the cause of Mr. Kane's death and the cause of death listed on the death certificate of "drowning" is not conclusive given the circumstances and the other potential causes of death. (Dkt. 25 at 3, 9.) Merely alleging the Defendant is liable because Mr. Kane was thrown into the water on the trip is insufficient, Defendant asserts, to meet Plaintiffs burden to show a causal link. Plaintiffs maintain they are not required to eliminate every other potential cause of death and that they have shown a genuine issue of material fact exists as to whether Mr. Kane's death was reasonably foreseeable as a natural and probable consequence of Defendant's breach of the standard of care; i.e. that inexperienced and unfit individuals could drown if thrown into Class V whitewater. (Dkt. 21 at 20.)

Plaintiffs have the burden of proving the Defendant's breach of the applicable standard of care was the proximate cause of the damages alleged. *See Easterling v. Kendall*, 367 P.3d 1214, 1226 (Idaho 2016). "Proximate cause is composed of two elements: cause in fact [, or "but for" cause,] and scope of legal responsibility." *Cramer v. Slater*, 204 P.3d 508, 515 (Idaho 2009) (quotations and citations omitted). "Actual cause is the factual question of whether a particular event produced a particular consequence." *Id.*

MEMORANDUM DECISION AND ORDER - 29

True proximate cause focuses on whether legal responsibility is extended to impose liability on a party for the consequences of conduct; i.e. "whether it was reasonably foreseeable that such harm would flow from the negligent conduct." *Id.* (citations and marks omitted). Proximate cause may be proved by direct evidence or a "chain of circumstances from which the ultimate fact required to be established is reasonably and naturally inferable." *Ballard v. Kerr*, 378 P.3d 464, 480 (Idaho 2016) (quoting *Weeks v. E. Idaho Health Servs.*, 153 P.3d 1180, 1185 (Idaho 2007) (quoting *Sheridan v. St. Luke's Reg'l Med. Ctr.*, 25 P.3d 88, 98 (Idaho 2001)).

The Court finds there is a genuine issue of material fact on this issue arising from various sources. The death certificate's original determination of the cause of death as "sudden cardiac arrhythmia" was crossed out and, in its place, lists the cause of death as "drowning" caused by "ejection from raft into cold water." (Dkt. 16-6, Ex. 22.) The coroner's report and deposition testimonies of the physician witnesses are inconclusive and shows a clear dispute concerning the actual cause of death. (Dkt. 16-6, Ex. 21, Coroner Report) (Dkt 16-6, Ex. 23, Depo. Hunter) (Dkt. 16-6, Ex. 24, Depo. Martin) (Dkt. 25-2, Ex. 7, Depo. Martin.) The witness statements and circumstances surrounding the events in question, such as how long Mr. Kane was under water and whether he was conscious or unconscious, also give rise to disputed questions of fact. Because there are genuine disputes as to material facts on this issue, summary judgment is denied.

MEMORANDUM DECISION AND ORDER - 30

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED as follows:

1)      Defendant's Motion to Strike (Dkt. 26) is **GRANTED IN PART AND DENIED IN PART** as stated herein.

2)      Defendant's Motion for Summary Judgment (Dkt. 16) is **DENIED**.

3)      The parties shall contact the Court to schedule a trial setting after a ruling on the pending Motion to Amend the Complaint is issued.

DATED: December 5, 2016

Edward J. Lodge
United States District Judge